UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

KRISTINA R. KLOSIN, as Administrator of
the Estate of Christopher J. Klosin, Deceased

NANCY MANGINE, as Executrix of the
Estate of Roger Mangine, Deceased

**DECISION and ORDER**

1:19-CV-00109-EAW-MJR

                    Plaintiffs,

     v.


E.I. DU PONT DE NEMOURS and COMPANY, *et al.*

                    Defendants.

———————————————————————

     This case has been referred to the undersigned by the Hon. Elizabeth A. Wolford

pursuant to 28 U.S.C. §636(b)(1) for supervision of discovery and procedural matters and

to handle all non-dispositive pre-trial motions and applications. Presently before the Court

is Plaintiff Klosin's motion to compel production of certain documents by non-party GXO

Logistics Supply Chain, Inc. (f/k/a XPO Logistics Supply Chain, Inc.). (Dkt. No. 151).

## **BACKGROUND**[1]

     In Fall 2019, Plaintiff Klosin ("Plaintiff") served a subpoena for documents on non-

party witness XPO Logistics Supply Chain, Inc. (now referred to as "GXO").[2] Plaintiff

requested that GXO produce documents regarding GXO's investigation, or any third-party

_____

[1] The Court assumes the parties' familiarity with the background facts, procedural history, and prior decisions in this case.

[2]  Upon the consent of the parties, the matters of *Klosin v. E.I. du Pont de Nemours and Company* (1:19-CV-109-EAW-MJR) and *Mangine v. E.I. du Pont de Nemours and Company* (1:19-CV-110-EAW-MJR) were consolidated into one case under Docket No. 1:19-CV-109-EAW-MJR by Order of this Court dated September 16, 2020. (Dkt. No. 88).

investigations, with respect to the accident involving Christopher J. Klosin on June 25, 2018 at the GXO Logistics facility in Lockport, New York. (Dkt. No. 41-1). Plaintiff also demanded records from Defendant E.I. du Pont de Nemours and Company ("DuPont"), including accident reports and records related to the June 25, 2018 accident, investigation documents performed by defendant or a third party, statements made by GXO or its agents and employees, and other documents related to the subject incident, subject container, and subject investigation. (Dkt. No. 41-2).

In response to the subpoena, non-party GXO asserted that various documents in its possession were privileged from discovery under the attorney-client and work product privileges. Following *in camera* review, this Court issued two discovery orders directing production of certain documents, including GXO's Incident Investigation/Root Cause Report dated January 30, 2019 ("Incident Investigation Report"). (Dkt. Nos. 51, 90). GXO objected to those orders, and, upon review, Judge Wolford issued a Decision and Order which affirmed in part and reversed in part the discovery orders. (Dkt. No. 122). In relevant part, Judge Wolford directed GXO to produce to Plaintiff the Incident Investigation Report subject to redactions of three sections, which the Court determined to constitute "core work product" subject to a heightened standard for disclosure, even upon a showing of substantial need. (*Id.*). Judge Wolford's decision left open for further review Plaintiff's argument regarding waiver of privilege, which is now being pursued. (*Id.*, pg. 31) ("To the extent Plaintiff believes she is entitled to the entirety of the incident report or any other associated documents because [GXO] waived any privilege, Plaintiff may pursue that argument before the Magistrate Judge.").

On December 23, 3021, Plaintiff Klosin filed the instant motion to compel production of the unredacted Incident Investigation Report. (Dkt. No. 151). Non-party GXO filed a memorandum in opposition and supporting declaration. (Dkt. Nos. 159; 160). Plaintiff filed a reply. (Dkt. No. 164). Defendant filed a supplemental affirmation in response to a factual correction made in Plaintiff's reply. (Dkt. No 168). The Court heard oral argument on the motion on February 16, 2022, at which time it considered the matter submitted for decision.

## DISCUSSION

The Court begins with a review of the timeline of events relevant to this motion, followed by analysis of the arguments presented.

### *Timeline of Events*

At the time of the June 25, 2018 accident underlying this action, a "Master Warehouse Services Agreement" existed between Defendant DuPont and Jacobson Warehouse Company, Inc. d/b/a XPO Logistics Supply Chain, Inc. (Dkt. No. 160, Ex. D). Pursuant to the Warehouse Agreement, Ryan Lema, Esq., of Phillips Lytle, LLP, former counsel for DuPont, sent a letter dated February 1, 2019 to GXO Logistics tendering the defense and indemnification of DuPont to GXO. (*Id.*, Ex. B, ¶ 3). On February 18, 2019, GXO retained the services of Donna Burden, Esq., of Burden, Hafner, and Hansen, LLC, to review DuPont's tender of defense and indemnification. (*Id.*, ¶ 2). On March 22, 2019, GXO agreed to conditionally indemnify DuPont and offered DuPont representation by Burden, Hafner, and Hansen, LLC. (*Id.*, Ex. D).

On or about July 1, 2019, GXO's insurer determined that DuPont qualified as an additional insured under a policy issued to GXO. (*Id.*, Ex. B, ¶ 5). On August 6, 2019, GXO and DuPont reached an agreement providing that GXO would fully indemnify DuPont in this action. (Dkt. No. 168-1, ¶ 3). Accordingly, Ms. Burden's firm was substituted as counsel for DuPont on August 7, 2019.[3] (*Id.*, ¶ 4). Between approximately August 7, 2019 and August 21, 2019, Ms. Burden represented both DuPont and GXO. (*Id.*, ¶ 5). Her firm ceased representation of GXO on or about August 21, 2019, at which time GXO, DuPont, and their law firms began cooperating under "a common interest privilege and joint defense agreement." (*Id.*, ¶ 6; Dkt. No. 160, ¶ 7). On August 23, 2019, GXO retained Julie Bargnesi, Esq., of Bargnesi Britt PLLC, to represent it and its employees after Plaintiff Klosin served subpoenas for documents on GXO and notices of intent to depose various GXO employees.[4] (Dkt. No 160, Ex. B, ¶ 8). The cooperation agreement between GXO and DuPont was memorialized in a written Joint Defense Agreement in December 2019. (Dkt. No. 160, ¶ 7).

On or about April 5, 2019, while Ms. Burden was acting as counsel to GXO alone, GXO disclosed a copy of Incident Investigation Report to Ms. Burden. (*Id.*, Ex. B, ¶ 4). Ms. Burden affirmed that DuPont never received a copy of the Incident Investigation Report prepared by GXO. (*Id.*, Ex. B, ¶ 9).

---

[3]  In her opening papers, Plaintiff Klosin submitted that Ms. Burden assumed DuPont's defense on March 22, 2019. Plaintiff's reply memorandum (Dkt. No. 164) and the supplemental affirmation of Ms. Burden (Dkt. No. 168) clarified that Ms. Burden did not assume DuPont's defense until August 7, 2019.

[4] GXO was later represented by Dorsey & Whitney law firm and is currently represented by Nathaniel H. Akerman, Esq. of the Law Office of Nathaniel Akerman. (Dkt. No. 159).

_Analysis_

Plaintiff argues that GXO waived its attorney-client or work product privilege over the Incident Investigation Report, and any other information exchanged, by disclosing it to Ms. Burden on April 5, 2019, at a time when GXO and Defendant DuPont did not share a common legal interest and were potential adversaries. According to Plaintiff, GXO's disclosure of the report to Ms. Burden means that Ms. Burden's knowledge of the information contained in it can now be imputed to DuPont, as her current client. As a result, Plaintiff asserts that she is entitled to receive the entirety of the Incident Investigation Report. Plaintiff also seeks discovery, or alternatively _in camera_ review, of the Joint Defense Agreement between GXO and DuPont because she believes its terms are controlling of this claim of waiver.[5] In response, GXO argues that the work product privilege was not waived by GXO's disclosure of the Incident Investigation Report to Ms. Burden when she was acting as its counsel. GXO further submits that Ms. Burden was entitled to share the Incident Investigation Report with DuPont while she was representing both companies, even though she did not do so. For the reasons that follow, the Court finds that no waiver of privilege occurred. Further, it sees no justification to order disclosure of the Joint Defense Agreement, as its terms are not relevant to the question of waiver.

In general, the presence of a third party destroys privilege, and any claim of privilege is waived by subsequent disclosure to a third party. _See In re Horowitz_, 482 F.2d 72, 81 (2d Cir. 1973). The joint defense privilege, more properly identified as the "common

---

[5] Additionally, during oral argument on this motion, Plaintiff's counsel requested an evidentiary hearing on the facts underlying this motion. Based upon the affirmations of Ms. Burden and the record before it, the Court does not find it necessary to hold such a hearing.

interest rule" has been described as an extension of the attorney client privilege. *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). It serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel. *Id.* Only those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected. *Id.* This doctrine does not establish separate grounds for privilege, but rather is an exception to the rule that voluntary disclosure of privileged material to a third party waives protection from disclosure. *City of Almaty v. Ablyazov*, 15-CV-05345, 2019 U.S. Dist. LEXIS 111607, at *20 (S.D.N.Y. July 3, 2019). For the privilege to apply, the proponent must establish that the parties had "some common interest about a legal matter." *In re Grand Jury Subpoena*, 415 F.3d 333, 340 (4th Cir. 2005) (quoting *Sheet Metal Workers Int'l Assoc. v. Sweeney*, 29 F.3d 120, 124 (4th Cir. 1994)). The burden of demonstrating the existence of a joint defense agreement falls on the party asserting it. *See United States v. Weissman*, 195 F.3d 96, 99 (2d Cir. 1999).

Plaintiff argues that the GXO and DuPont are not able to invoke the joint defense privilege because they did not share a common interest, nor were communications about the Incident Investigation Report intended to further any common enterprise. To this point, GXO initially offered only *conditional* indemnification of DuPont. DuPont did not consent to that arrangement and continued to be represented by Mr. Lema.[6] On or about August 7, 2019, GXO agreed to complete indemnification of DuPont and Ms. Burden was

---

[6] Indeed, on March 12, 2019, Plaintiff sought leave of the Court to file a third-party complaint against GXO. (Dkt. No. 8). Mr. Lema subsequently advised this Court that there would not be a third-party complaint filed, as there had been a substitution of counsel. (*See* Dkt. No. 164-2).

substituted as counsel. However, there is no indication, and Plaintiff does not argue, that the Report was disclosed to DuPont during the period when DuPont and GXO were working out the terms of indemnification and their interests were, at least arguably, adversarial. The only known disclosure of the Report occurred to Ms. Burden when she was representing GXO. Potentially, though, disclosure of that privileged information to DuPont could have occurred any time after Ms. Burden commenced her representation of DuPont.

When one attorney represents multiple clients concerning a matter of common interest, any confidential communications exchanged among them are privileged against the outside world. *Ambac Ass. Corp. v. Countrywide Home Loans, Inc.*, 27 N.Y. 3d 616, 625 (2016). Under New York law, the common interest exception applies only "where two or more clients *separately* retain counsel to advise them on matters of common legal interest." *Id.* (emphasis in original). Here, the Court is presented with a situation where two clients were represented by the same counsel, not one where two clients retained separate counsel and sought to share information between their attorneys. It is undisputed that when GXO disclosed the Investigation Report to Ms. Burden, she was acting as its counsel. Ms. Burden then went on to jointly represent GXO and DuPont, for at least the time between August 6, 2019 and August 23, 2019. Ms. Burden now represents DuPont alone. This is an instance of joint clients and joint representation. *See In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996) ("When the same attorney represents the interests of two or more entities on the same matter, those represented are viewed as joint clients for the purposes of privilege."); *see also Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 211 n.4 (S.D.N.Y. 2009)

(distinguishing joint representation from joint interest theories and noting that "joint representation is frequently confused with the 'common interest' doctrine").

As the Court of Appeals explained in *Ambac*, "[i]n the joint client or co-client setting [...], the clients indisputably share a complete alignment of interests in order for the attorney, ethically, to represent both parties. Accordingly, there is no question that the clients share a common identity and all joint communications will be in furtherance of that joint representation." 27 N.Y. 3d at 631. GXO's agreement to fully indemnify DuPont and provide Ms. Burden's services for DuPont's defense show that the companies undoubtedly share a common legal interest in defending this action. To this point, in holding that the work product privilege doctrine was applicable to the work of a non-party, Judge Wolford previously stated that "because [GXO] is required to indemnify DuPont for any liabilities and expenses resulting from the accident in question, it arguably has an interest affected by the outcome of this litigation." (Dkt. No. 122, pg. 14).

It has already been determined that the Incident Investigation Report was prepared in anticipation of litigation, and it is clear that GXO's disclosure of the Report was made to Ms. Burden in connection with litigation. Neither the disclosure of the Incident Investigation Report to Ms. Burden while she was acting as counsel to GXO, nor her subsequent representation of DuPont pursuant to the indemnification agreement, can be construed as a waiver of that privilege. *See Lugosch v. Congel*, 219 F.R.D. 220, 240 (N.D.N.Y. 2003) ("[A]s long as the information is being prepared in anticipation of litigation, and the disclosure to co-parties is made in pursuit of preparation for trial and is not inconsistent with maintaining secrecy from their adversary, a waiver of the work product document should not be considered."); *see also PMC Aviation 2012-1 LLC v. Jet*

*Midwest Group, LLC*, 654047/2015, 2018 N.Y. Misc. LEXIS 3725, at *3 (Sup. Ct. Aug. 30, 2018) ("co-litigants in an active litigation who share a common interest should be able to share their own pre-litigation privileged communications if that disclosure furthers their common interest in litigation without any fear of waiver.").

Plaintiff argues that *Ambac* does not apply because GXO and DuPont were not simultaneously represented by Burden in April 2019, when the Report was disclosed to Ms. Burden. However, this argument is logically flawed because Plaintiff does not argue that Ms. Burden, or anyone else, disclosed the Report to DuPont prior to the indemnification agreement, joint representation, or joint defense agreement. Indeed, Plaintiff only argues that the waiver occurred through the knowledge of Ms. Burden imputed to her new client, DuPont, based on principles of agency.[7] However, even assuming that the imputation theory is valid under these circumstances, it would not apply until Ms. Burden commenced her representation of DuPont, at which time GXO had already agreed to fully indemnify DuPont and the two entities shared a common interest.[8]

Plaintiff further argues that it is "fundamentally unfair" for DuPont to have the benefit of the information contained in the Incident Investigation Report while Plaintiff does not. Plaintiff fails to submit case law supporting this position. Moreover, in this

---

[7] *See generally Emigrant Bank v. Commonwealth Land Title Ins. Co.*, 15-CV-7593, 2017 U.S. Dist. LEXIS 157734, at *18 (S.D.N.Y. Sept. 26, 2017) ("a principal is bound by notice to or knowledge of his agent in all matter within the scope of his agency even though the information may never actually have been communicated to the principal.").

[8] Plaintiff's reliance on *Tribune Co. v. Purcigliotti*, 93-CV-7222, 1997 U.S. Dist. LEXIS 13165, at *9 (S.D.N.Y. Sept. 3, 1997) is inapposite. There, a "standstill/tolling agreement" was ordered to be produced despite plaintiff's assertion of privilege. *Id.* Although it was part of a broader joint defense agreement, the Court found that the standstill agreement related to potential interests of plaintiff and a non-party that were adverse, not common, and was relevant to the fraud claims at issue. *Id.* The facts are not analogous here. Moreover, Plaintiff has not demonstrated that the terms of the Joint Defense Agreement are relevant to waiver of privilege in the context of joint representation.

Court's view, questions of fundamental fairness have already been addressed on this issue, particularly by the decision of Judge Wolford finding substantial need for disclosure of the redacted Incident Investigation Report under Fed R. Civ. P. 26(b)(3)(A)(ii). (Dkt. No. 122, pgs. 23-30).

## CONCLUSION

For these reasons, the Court finds that non-party GXO Logistics was entitled to share the Incident Investigation Report with its counsel, Ms. Burden, during the period of her representation and that no waiver of privilege occurred by the fact of Ms. Burden's subsequent joint representation of GXO and Defendant DuPont. Accordingly, Plaintiff Klosin's motion to compel disclosure (Dkt. No. 151) is denied.

**SO ORDERED**.

Dated: April / 3 , 2022
      Buffalo, New York

                              MICHAEL J. ROEMER
                              United States Magistrate Judge