UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KRISTINA R. KLOSIN, as Administrator of
the Estate of Christopher J. Klosin, Deceased

NANCY MANGINE, as Executrix of the                    REPORT, RECOMMENDATION
Estate of Roger Mangine, Deceased                     and ORDER

                                    Plaintiffs,        1:19-CV-00109-EAW-MJR

   v.


E.I. DU PONT DE NEMOURS and COMPANY, *et al.*

                                    Defendants.

_____


       This case has been referred to the undersigned by the Hon. Elizabeth A. Wolford

pursuant to 28 U.S.C. §636(b)(1) for supervision of discovery and procedural matters and

to handle all non-dispositive pre-trial motions and applications.

       Presently before the Court is a motion to strike Defendant DuPont's answer

brought by Plaintiff Mangine.[1] (Dkt. No. 193). Also before the Court is a motion for

protective order brought by Defendant DuPont (Dkt. No. 194), and a cross-motion to

compel brought by Plaintiff Klosin (Dkt. No. 196). For the following reasons, it is

recommended that Plaintiff's motion to strike be denied without prejudice to renewal.

Further, it is ordered that Defendant's motion for protective order is denied and Plaintiff's

cross-motion to compel is granted.

_____

[1] Due to the nature of this motion to strike, Judge Wolford referred the motion to the undersigned for resolution of both non-dispositive and dispositive issues, including issuance of a report and recommendation, if necessary. (Dkt. No. 195).

## BACKGROUND[2]

As is well known to the parties herein, this action has followed a complicated path through the discovery process which has required repeated Court intervention. For clarity, the Court limits its review of the procedural background to the pending discovery and sanctions motions.

By letter dated July 13, 2022, Defendant DuPont requested the Court's assistance with a discovery dispute. (Dkt. No. 187). Plaintiff Klosin filed a letter response. (Dkt. No. 190). Following a conference held before this Court on August 2, 2022, the Court gave Defendant leave to file a formal motion. On August 12, 2022, Defendant filed a motion seeking a protective order pursuant to Fed. R. Civ. P. 26 precluding and prohibiting deposition testimony and production of documents relating to remedial measures taken after the accident and subsequent packaging failures or accidents. (Dkt. No. 194). Plaintiff Klosin filed a response in opposition, cross-motion to compel DuPont's response to the discovery requests, and a request for sanctions against DuPont. (Dkt. No. 196).

Also on August 12, 2022, Plaintiff Mangine filed a motion to strike the answer of Defendant and schedule a hearing solely on the issue of damages pursuant to Fed. R. Civ. P. 26(e), 30(b)(6), and 37(b) and (c). (Dkt. No. 193). Defendant filed a combined response to Plaintiff Mangine's motion to strike and Plaintiff Klosin's cross-motion to compel. (Dkt. Nos. 200; 201). Plaintiff Mangine filed a reply. (Dkt. No. 205).

On October 24, 2022, the Court held a motion hearing on Plaintiff's motion to strike and Defendant's motion for a protective order, as well as Plaintiff's cross-motion to

---

[2] The Court assumes the parties' familiarity with the background facts, procedural history, and prior decisions in this case.

compel. The Court requested further briefing on several issues and scheduled a second date for continuation of oral argument.

Plaintiff Klosin and Plaintiff Mangine each filed supplemental memoranda on November 7, 2022. (Dkt. Nos. 213; 214). On November 18, 2022, counsel for Plaintiff Mangine sent a letter advising the Court of additional document production received from Defendant four days earlier, which Plaintiff's counsel argues was improperly withheld and relevant to the pending motions. (Dkt. No. 217). Defendant then filed a supplemental response. (Dkt. No. 223). Non-party XPO Logistics also filed a memorandum in opposition to Plaintiff's motion to strike as it relates to Plaintiff's request for disclosure of XPO's investigative report. (Dkt. No. 222). Plaintiff Mangine filed a reply. (Dkt. No. 226).

On December 12, 2022, Defendant DuPont filed a notice of settlement advising this Court that it had reached a settlement of this action with Plaintiff Klosin only. (Dkt. No. 227). By letter of the same date, counsel for Plaintiff Nancy Mangine advised that he intended to go forward with argument on the several pending motions.[3] (Dkt. No. 228).

On December 13, 2022, the Court heard additional oral argument on Plaintiff's motion to strike. At that time, the Court considered these matters submitted for decision/report and recommendation.[4]

## DISCUSSION

The Court first addresses Defendant's motion for a protective order concerning the production of documents and deposition testimony. Second, the Court provides its

---

[3] Also pending before the Court during this time period was a motion to quash (Dkt. No. 208) brought by non-party XPO Logistics, which has since been addressed by separate Decision and Order. (See Dkt. No. 236).

[4] Defendant made an additional post-argument submission (Dkt. No. 230), to which Plaintiff Mangine responded (Dkt. No. 232). The Court has considered both.

recommendations for Plaintiff's motion to strike Defendant DuPont's answer and for the imposition of sanctions.

### *Motion for Protective Order*

Defendant DuPont moved for a protective order precluding and prohibiting deposition testimony regarding topics of subsequent remedial measures and any alleged subsequent A-frame shipping/packaging failures. DuPont argues that evidence of subsequent remedial measures or subsequent packaging failures is not discoverable or admissible.[5] DuPont also objects to topics included in Plaintiff Klosin's Fed. R. Civ. P. 30(b)(6) deposition notice because they no contain a limitation on time and seek witness testimony for the time period of 2015 to the present.

Plaintiff Klosin filed a cross-motion to compel DuPont's response and for sanctions against DuPont. Plaintiff first argues that DuPont's motion is untimely and represents DuPont's continued efforts to delay and obstruct this action. Plaintiff states that DuPont's dilatory tactics include avoiding scheduling depositions of its representatives; failing to designate its 30(b)(6) corporate representative; untimely making of this motion two days prior to a scheduled deposition; seeking to re-litigate witness instruction issues already decided by this Court; and unilaterally withholding documents during electronic discovery that concern subsequent remedial measures and/or alleged subsequent A-frame failures. Plaintiff notes that the Court previously directed DuPont to produce all electronically stored information ("ESI") from 2015 to the present. Plaintiff's claims about DuPont's

---

[5] DuPont also submits that the majority of topics identified in Plaintiff Klosin's 30(b)6) deposition notice are premised on a mistaken assumption that DuPont controlled the packaging and shipping of the subject container. DuPont states that Defendant WanFeng, who has not appeared in this action, was hired to handle issues of design, manufacture, supply, and distribution of the dunnage and A-frames used in shipping the products, and DuPont had no role in the shipping and packing of the slabs involved in the accident.

dilatory and obstructive conduct are addressed below. On the merits of the motion, Plaintiff argues that the discovery sought is relevant and admissible.

During a motion hearing held October 24, 2022, this Court ruled that DuPont would be required to produce to Plaintiffs all responsive documents withheld on the basis that they relate to subsequent remedial measures or subsequent accidents. The Court reiterated its prior order directing DuPont to produce all discovery from 2015 to the present. The Court further directed counsel for DuPont that witnesses shall not be instructed not to answer questions during deposition unless a privilege is being asserted. *See* Fed. R. Civ. P. 30(c)(2) (objections during examination must be noted on the record, but the testimony is taken subject to any objection and "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).").

Counsel for DuPont has acknowledged the Court's instructions and has since represented to the Court that, as of November 14, 2022, it has produced to Plaintiffs all discovery related to subsequent remedial measures and subsequent accidents. In the interest of clarity in the record, and to the extent this motion and cross-motion are not mooted by the recent settlement agreement between Plaintiff Klosin and DuPont, the Court now summarizes the reasoning supporting its prior rulings issued from the bench.

In general, evidence of remedial measures is not discoverable or admissible to prove culpability in negligence cases. *See Graham v. Kone, Inc.*, 130 A.D.3d 779 (2d Dep't 2015); Fed. R. Evid. 407 ("When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or

a need for a warning or instruction."). However, Rule 407 provides that proof of such measures is admissible for a variety of other reasons, including showing ownership, control, or feasibility of precautionary measures, if controverted, or for impeachment purposes. *See Farmington Cas. Co. v. 23rd St. Props. Corp.*, 98-CV-3597, 1998 U.S. Dist. LEXIS 17077, at *3 (S.D.N.Y. Oct. 27, 1998). Where documents or information requested appear reasonably calculated to lead to the discovery of admissible evidence, and are relevant and not privileged, they are properly discoverable. *Id.*; *see also Mull v. City of New York*, 08-CV-8854, 2010 U.S. Dist. LEXIS 48399, at *6 (S.D.N.Y. Apr. 30, 2010) ("Of course, the admissibility of Defendants' post-incident uses of force is not yet ripe for the Court's consideration. It is axiomatic that evidence need not be admissible in order to be discoverable. At this juncture, the only question is whether Plaintiff's request that they be produced is "reasonably calculated to lead to the discovery of admissible evidence.") (in the context of Rule 404(b) prior act evidence).

DuPont has relied on *Alfieri v. Carmelite Nursing Home, Inc.*, 29 Misc. 3d 509 (Civ. Ct. Richmond County), for an explanation of the policy concerns behind the exclusion of evidence of subsequent remedial measures and for a holding that evidence of retraining of employees following a fatal accident would not be admissible at trial to prove negligence or culpable actions, and was therefore not discoverable at pretrial stages either. There, the court stated, in relevant part, "[i]n following the Supreme Court's holding in [*Wood v. Bartholomew*, 516 U.S. 1, 6 (1995)] the court is obligated to find that any evidence that is inadmissible at trial is also undiscoverable pretrial." *Id.*, at 516-17.

Plaintiff argues that information about subsequent measures is discoverable here because it is sought to prove issues of notice, control, and possibly feasibility, which are

allowable under FRE 407. *See* Fed. R. Evid. 407 ("But the court may admit this evidence [of subsequent remedial measures] for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures."). Plaintiff further submits that the evidence is discoverable because records already produced by DuPont demonstrate that DuPont was in the process of implementing changes to its shipping, packaging and bracing (dunnage), and unloading procedures prior to the incident at issue here. *See Chase v. General Motors Corp.*, 856 F.2d 17, 21-22 (4th Cir. 1998) (holding that Rule 407 does not exclude evidence about changes made to brake design of car in negligence case because the changes were made several months before the accident).

Here, ownership and control over the shipping and packaging of the container where the accident occurred is a central issue, therefore information related to subsequent changes to those procedures is reasonably likely to lead to admissible evidence under one or more exceptions to Rule 407. *See Hughes v. Cold Spring Const. Co.*, 26 A.D.3d 858 (4th Dep't 2006) ("Here, plaintiff has raised an issue of control, and thus we conclude that documents disclosing the State's postaccident remedial measures are 'material and necessary in the prosecution of this action.'") (quoting CPLR § 3101(a)). Thus, it is ordered that DuPont shall not withhold from production any non-privileged and relevant materials which relate to subsequent remedial measure, nor shall counsel for DuPont direct any witness not to provide deposition testimony on such topics.[6]

---

[6]   At oral argument on this motion on October 24, 2022, DuPont argued that Judge Wolford's September 20, 2021 Decision & Order, (Dkt. No. 122), which addressed non-party XPO Logistics' assertion of privilege over XPO's accident report and related documents, was relevant to evidence of subsequent remedial measures contained in certain documents. This argument was re-stated but not further developed by DuPont in its supplemental briefing. Although Judge Wolford held that "XPO is not required to produce [certain] documents because they contained information incorporated into the incident report relevant to Sections 7 through 9, for which Plaintiff has not shown a substantial need[,]" the Decision

The question of admissibility of evidence of later failures of A-frame dunnage used for quartz slabs or the occurrence of similar accidents is distinct from that of subsequent remedial measures possibly taken by DuPont. DuPont relies on *Kolody v. Supermarkets General Corp.*, to support its position that discovery of such information is not allowable here. *See* 163 A.D.2d 276, 277 (2nd Dep't 1993) ("Discovery of evidence of subsequent similar accidents, while material in cases where a defect is alleged in the design or creation of a product or structure […], is irrelevant and inappropriate in cases such as [a slip and fall case] where no inherent defect is alleged."). This and other caselaw relied on by DuPont does not stand for a general rule that evidence of later similar accidents is inadmissible on its face. Instead, these holdings indicate that the admissibility determination is focused on relevancy of the evidence and is more appropriately addressed through motions *in limine*. *See DiFranceso v. Win-Sum Ski Corp.*, 13-CV-148, 2017 U.S. Dist. LEXIS 39695 (W.D.N.Y. Mar. 20, 2017) (plaintiffs sought to admit evidence of subsequent accidents involving skiers falling from a chairlift to show existence of a dangerous condition; court ruled evidence was inadmissible because the later accidents were not sufficiently similar to the subject accident); *see also Petrilli v. Federated Dept. Stores, Inc.*, 40 A.D.3d 1339, 1340 (3d Dep't 2007) ("[e]vidence of a subsequent accident occurring under conditions similar to those existing at the time of the accident complained of is admissible and of probative value on the issue of whether a dangerous condition existed, but cannot charge the defendant with notice of such a

---

applied only to the assertion of privilege over remedial actions of XPO, not DuPont. Further, the Decision contained no discussion of the discoverability, or later admissibility, of evidence of remedial measures separate and apart from a claim of attorney-client privilege or work product protections. (Dkt. No. 122, pg. 30). Further, it is DuPont's position that this argument is now moot based on the Court's directives and its own production of this evidence. (Dkt. No. 223-28, pg. 35).

condition."); *Mull, supra* (court ordered defendants to produce post-incident disciplinary records about use of force incidents against inmates because such evidence "may well be admissible at trial under FRE 404(b) […]")

At this juncture, the Court cannot say that documents or testimony about later, similar accidents or A-frame shipping failures would be inadmissible for any purpose. DuPont has not demonstrated that evidence of subsequent accidents is categorically irrelevant – therefore, discovery of such evidence will be allowed. To be clear, DuPont shall have the later opportunity to challenge the relevance and admissibility of any evidence relating to subsequent remedial measures or subsequent accidents through motions *in limine* prior to trial.

For these reasons, DuPont's motion for a protective order is denied and DuPont is ordered to continue to comply with Plaintiff's discovery demands.

### *Motion to Strike and/or Sanctions*

Plaintiff Mangine seeks the admittedly severe sanction of striking DuPont's answer based upon DuPont alleged repeated and intentional failures to comply with discovery demands and directives of this Court. In the event DuPont's pleading is struck, Plaintiff requests that a hearing be scheduled solely on the issue of damages. Plaintiff also seeks lesser sanctions at the Court's discretion.

Fed. R. Civ. P. 37 authorizes a court to impose appropriate sanctions, including striking of a pleading, for a party's failure to obey a court order, make disclosures, or cooperate in discovery. Fed. R. Civ. P 30(d)(2) further allows a court to impose appropriate sanctions – including the reasonable expenses and attorney's fees incurred

by any party – on a person who impedes, delays, or frustrates the fair examination of a deponent.

"It is well-established that Rule 37 accords wide discretion to the district court to impose sanctions for a party's failure to comply with court ordered discovery including striking pleadings and entry of default against a disobedient party." *Lennon v. Allegiance Accounting Servs.*, LLC, 19-CV-1541, 2022 U.S. Dist. LEXIS 60566, at *10 (W.D.N.Y. Mar. 31, 2022). The relevant factors for determining whether a court should exercise its broad discretion under Rule 37 are: "the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *S.E.C. v. Setteducate*, 419 F. Appx. 23, 24 (2d Cir. 2011) (summary order) (citing *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763-64 (1980).

Plaintiff sets out a series of actions on the part of DuPont which it believes demonstrate that DuPont has acted in bad faith, including misleading the Court, improperly withholding documents, improperly instructing witnesses not to answer questions during deposition, and failing to prepare a corporate designee for deposition. In addition, Plaintiff argues that the factual findings and decisions made previously by this Court and the District Court relative to XPO's assertion of privilege over its own investigation report could be affected by newly discovered information from DuPont.

Plaintiff relies on the matter of *Vanceah v. Nat'l R.R. Passenger Corp.*, 18-CV-9418, 2022 U.S. Dist. LEXIS 136500 (S.D.N.Y. Aug. 1, 2022), to support claim that striking DuPont's answer is warranted and appropriate. In *Vanceah*, repeated discovery abuses led the court to dismiss a plaintiff's gender discrimination and workplace retaliation case. There, plaintiff purposely withheld and/or deleted records of her relevant text messages, withheld documents, contradicted herself in written submissions to the court, and failed to correct false information. *Id.*, at *34-36. The court concluded that plaintiff had shown willful and bad faith noncompliance with the discovery process which warranted of dismissal of her case. *Id.*

DuPont opposes the motion, arguing that it has acted in good faith, that any instances of untimely or incomplete discovery production were not willful, and that no prejudice has been suffered by Plaintiff as a result of its delayed disclosures or unintentional noncompliance with the Court's directives.

### *DuPont's Investigation of the Incident*

The first issue raised by Plaintiff is DuPont's inaccurate claim that it never performed an investigation of the fatal accident and that no incident or accident report existed in DuPont's records. DuPont repeatedly denied possessing any reports or documents related to an investigation. Counsel for DuPont, Donna Burden, Esq. and Phyllis Hafner, Esq., each have been questioned by the Court regarding the existence of such a report, which they denied. However, in or about July 2022, DuPont produced to Plaintiffs a document titled "Final Lockport Investigation Report" which summarizes an investigation into the shipment of the subject container, previous incidents involving

quartz shipments, coordination and guidance between XPO and DuPont on handling quartz, and actions to prevent future shipping and loading failures. (Dkt. No. 190-1).

In the Court's view, DuPont has not provided a meaningful or justifiable explanation for DuPont's prior denials of such an investigation and its failure to timely produce the relevant documents and report.

Early in this litigation, Plaintiffs made a request for production from DuPont for all accident reports and records with respect to the incident. (Dkt. No. 193-4, pg. 15). DuPont responded that it did not have an accident report, nor was in possession of any accident report. Counsel for Plaintiff Klosin, Melissa Wischerath, Esq., subsequently emailed counsel for DuPont to clarify the response and confirm her understanding that "neither DuPont nor XPO prepared an accident report nor investigated this accident in a manner that would have resulted in notes, documents, etc., i.e., not a formal accident report?" (*Id.*, pg. 14). Ms. Burden responded by email to Ms. Wischerath on November 5, 2019, confirming that "[…] DuPont has no accident report and did not investigate this accident." (Dkt. No. 193-3).[7]

At an appearance before this Court on November 13, 2019, Ms. Hafner stated plainly that "DuPont did not conduct an investigation. They do not have an accident report." (Dkt. No. 193-3, pgs. 10-11). She continued, "[t]he email that they attached to their letter could not be more clear. […] [M]y client explicitly stated, DuPont did not prepare an accident report." (*Id.*). The Court expressed incredulity that DuPont had not performed any investigation of this incident, stating: "It is rather hard to understand how DuPont

---

[7] It is known to all at this time that XPO Logistics did prepare its own incident investigation report and there is no dispute over that fact.

wouldn't have a single sheet of paper that has anything to do with this accident. (Dkt. No. 193-4, pg. 16). To which Ms. Hafner responded, "Well, DuPont did not investigate it." (*Id.*).

At the request of the Court, Ms. Burden provided an affidavit dated November 27, 2019, affirming the following: "I have made a diligent enquiry with my client, DuPont, about any potential investigation of this accident and the preparation of any accident report. DuPont did not conduct any investigation into this accident, and DuPont did not create an accident report. DuPont never received a copy of the Incident Investigation and Root Cause Analysis Report prepared by XPO Logistics." (Dkt. No. 35, ¶ 9).

Despite these assurances to the Court and Plaintiffs, defense counsel recently produced approximately 40,000 electronic documents to Plaintiffs, which included a document created by unknown authors at DuPont titled "Final Lockport Investigation Report: August 13, 2018." (Dkt. No. 190-1). This 11-page document consists of electronic slides bearing DuPont's logo and the name "Specialty Products Division." (*Id.*). It contains the background of the Lockport warehouse, including ownership and importing history, and a description of how processes were transitioned to XPO at the warehouse. (*Id.*, pgs. 2, 9). It contains a timeline of events involving the subject container and shipment entitled "What did we know about the shipment and when?" (*Id.*, pg. 3). It provides links to documents reflecting information DuPont shared with XPO about handling quartz. (*Id.*, pg. 4). It includes a detailed chart of the date and subject of conversations DuPont had with its quartz suppliers about shipments. (*Id.*, pg. 5). It also itemizes previous incidents of "failures" involving quartz shipments and how they were resolved. (*Id.*, pgs. 6-7). It summarizes how DuPont's shipping standards compare with industry standards. (*Id.*, pg.

8). Lastly, the report itemizes "Next Steps" for safety in loading, design, and operations. (*Id.*, pg. 10).

After producing the report, counsel for DuPont did not alert Plaintiffs or the Court to the presence of report or the error in its past representations that no such report existed. Instead, counsel buried it amidst thousands of other documents, presumably with the hope that it would not be noticed or discovered. DuPont's failure to call attention to the existence of this report and related documents was in violation of Fed. R. Civ. 26, which requires parties to correct discovery responses or supplement its responses in a timely manner. *See* Fed. R. Civ. P. 26(e)(1) ("A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.).

In supplemental submissions to the Court, DuPont now takes the position that "for all intents and purposes" it did not conduct an investigation into the subject accident. (Dkt. No. 223-28, pg. 14). DuPont attempts to explain that the Lockport Investigation Report was not turned over because it was not a "typical" or "traditional" accident report. DuPont explains that XPO prevented it from formally investigating the accident and could not interview XPO employees or access the scene of the accident. DuPont's Chief Litigation Counsel, Sarah DiLuzio, Esq., submits a declaration in which she states that in her experience with DuPont, the term "incident investigation" means a thorough, on-site

investigation during which eyewitnesses are interviewed and root causes are identified. (Dkt. No. 223-33). She "[does] not consider the internal investigation conducted by Mr. Shields at DuPont Legal's direction to be an 'incident investigation,'" nor would she characterize it as an "accident investigation" or "accident report." (*Id.*). DuPont attempts to minimize the import of the report by explaining that it focuses only on the shipment of quartz materials in general, DuPont's shipping standards, and future steps for loading procedures for overseas suppliers. This position is echoed by a memorandum submitted by XPO asserting that DuPont's Report does not address "the facts of the accident" which were investigated by XPO. (Dkt. No. 222). While acknowledging DuPont's representations that it did not inspect the accident site nor interview witnesses to the accident, the Court is still unclear as to why the detailed investigation DuPont did perform would not be understood as a "formal" investigation or report.

Further, on November 14, 2022, DuPont served additional electronic discovery which included newly disclosed emails relevant to DuPont's investigation of the Lockport accident. Emails from Jeffrey Shields (Environmental, Health, and Safety Manager for DuPont) reflect that he was "leading the internal DuPont investigation" about the incident, which included interviews of at least ten DuPont employees. (Dkt. No. 217, pgs. 9-10). Mr. Shields has since provided a declaration to the Court describing the scope of DuPont's internal investigation, including the facts that were in DuPont's possession about the events prior to the June 25, 2018 incident and the packaging and shipping practices for DuPont's Corian Quartz products. (Dkt. No. 223-30). He alleges that he was not permitted to inspect the Lockport warehouse site or interview XPO employees who witnessed the incident. (*Id.*). Ms. DiLuzio's declaration alleges that shortly after the

incident occurred, counsel between XPO and DuPont were in contact regarding the conduct of the investigation. (Dkt. No. 223-33). DuPont concluded that they would defer to XPO for on-site incident investigation. (*Id.*). DuPont agreed to reasonably cooperate with XPO's investigation and DuPont responded to formal information requests. (*Id.*). Ms. DiLuzio further states that although Kimberly Richardson (Occupational, Safety, and Health for DuPont) had verbal conversations with XPO's in-house counsel about the incident, including asking for a copy of XPO's report, the document was never shared with DuPont. (*Id.*). Ms. DiLuzio acknowledges that XPO's counsel verbally shared with Ms. Richardson that XPO needed to better understand policies and procedures from DuPont for handling of Corian Quartz containers and that Ms. Richardson shared that information with counsel and certain managers at DuPont. (*Id.*)

In the same discovery production, emails from Dennis Wertz (DuPont) further indicate that Mr. Wertz, Jean-Erik Sylvain (Technology Guardian, formerly Program Manager, for DuPont), and others met with second shift employees at DuPont's Thetford Mines site in Quebec to address safety immediately after the Lockport accident. Mr. Sylvain has submitted a declaration stating that on September 11, 2018, approximately three months after the accident, he and another employee travelled to the Lockport site to meet with XPO management about resuming their processing of containers of Corian Quartz. (Dkt. No. 223-29). He alleges that they did not discuss the accident, view the scene of the accident, nor question anyone about details of the accident. (*Id.*).

Plaintiffs take the position that this discovery shows not only that DuPont conducted a substantial investigation, which should have been disclosed much earlier, but also that DuPont representatives were assisting XPO in corrective actions and

recommendations months before XPO's final report was issued. They argue that DuPont had a substantial role in what they now believe was a joint DuPont-XPO investigation.[8] Indeed, Plaintiffs have pointed to considerable evidence indicating that DuPont has not been forthright in its characterization of its own investigation and its related discovery responses. The evidence also casts at least some doubt on both XPO and DuPont's representations that the results of XPO's investigation were not shared with DuPont, thus suggesting that XPO may have waived its claim of privilege over the contents of its report.[9]

Further supporting Plaintiffs' claim that DuPont was willful in misleading the Court and counsel about its own investigation, are the recent denials of the investigation by DuPont's corporate designee, Jean-Erik Sylvain. Mr. Sylvain was deposed in July 2022, at which time he denied that DuPont performed any investigation of this incident and stated that DuPont did not issue an investigation report, even after such report had been turned over to Plaintiffs. Plaintiffs submit that DuPont has intentionally misled the Court and has allowed its corporate representative to testify falsely on this topic. DuPont acknowledges that it produced the report within ESI discovery but maintains its position that it did not conduct a "formal" investigation of the alleged incident.

Mr. Sylvain provided the following testimony during deposition on July 15, 2022:

Q.      Sir, as far as you know, did DuPont perform an investigation of this incident?

---

[8] Plaintiffs initial asserted that the newly turned over Shields' email and other communications showed that DuPont employees were on-site in the immediate aftermath of the accident. The supplemental declarations and other evidence do not actually reflect that, which Plaintiffs acknowledge in reply. All of Mr. Shields' interview requests were directed to DuPont employees, and he denies travelling to the Lockport site or speaking with any XPO employees after the deaths occurred. Further, Mr. Shields clarifies that his interviews of DuPont employees occurred at the DuPont Yerkes Manufacturing site in Buffalo, not the Lockport warehouse.

[9] This point is discussed further below.

A.    No. XPO did the investigation.

Q.    I understand XPO did an investigation, but did DuPont also do an investigation?

A.    No formal investigation, no.

Q.    Did DuPont do any kind of investigation?

A.    We, we met together. We, we looked at where we were in the state of the transport of slabs, but we, we were in the process of continuous improvement for the shipping of slab, so of course there was some, some meeting that happened. We were continuing our business. There was still some container coming to the sea, so, yes, we met to try to find mitigation or met to be able to unpack the container safely, but we did not do a formal incident investigation for the container where there was fatalities.

(Dkt. No. 210-13, pg. 13; 87:8-88:2).

Q.    Sir, did DuPont perform an investigation of this incident?

A.    No.

Q.    Did DuPont issue a final Lockport investigation report?

A.    No.

Q.    Did you ever review the XPO investigation?

A.    No.

(*Id.*, pg. 13; 90:4-11).

DuPont offers that Mr. Sylvain, whose deposition was scheduled to continue on October 14, 2022, can be further questioned about the investigation. DuPont's counsel also claims that Mr. Sylvain attempted to correct his testimony on this point through an

errata sheet. Contrary to this claim, the Court has reviewed the Errata Form supplied for Mr. Sylvain's testimony, (Dkt. No. 214-4), and it does not reflect any correction to these portions of his testimony.

Plaintiffs argue that, because DuPont failed to disclose its own investigative report, the XPO report was thought to be the only source of information as to many of the facts in this case. They point out that discovery was significantly delayed while motion practice occurred on the discoverability of XPO's report. Plaintiffs are adamant that, had they known of the existence of this report and the related discovery, they could have proceeded more quickly with depositions of the DuPont employees involved in the investigation.

Despite the apparent egregiousness of DuPont's actions and omissions, the Court is not yet fully persuaded that this behavior warrants a sanction as severe as striking DuPont's answer. First, as DuPont argues, Plaintiffs had already identified many of the same DuPont employees who were involved in the investigation in their deposition notices prior to the production of the investigation report. Therefore, although Plaintiffs did not have the report, they have known of the relevant witnesses and have stated their intent to depose these witnesses about matters involving the shipping and handling of the subject materials. Second, the information contained in DuPont's report does not contain the breadth of information that XPO's report detailed about the circumstances of the accident. DuPont's investigation does not appear to have involved any interviews of witnesses to the accident, any inspection of the site, nor any other direct investigation into the events that occurred on site in the Lockport warehouse. In fact, there is limited new information about the accident contained within the Final Lockport Investigation Report.

The Court is skeptical that the course of discovery would have changed significantly if the DuPont Report or related discovery was disclosed earlier. However, the misconduct of DuPont did not end here and there are open questions of whether all discoverable material related to DuPont's investigation has been disclosed, and whether there were misrepresentations about the exchange of information between DuPont and XPO which might affect the law of this case.

_Effect of Additional Discovery on XPO's Assertion of Privilege_

Plaintiff emphasizes that the fact of DuPont's own investigation and issuance of a report may have affected this Court and the District Court's prior decisions relating to the discoverability of XPO's accident investigation report. As such, Plaintiffs request full disclosure of the complete XPO accident report in light of misrepresentations regarding the facts relevant to Judge Wolford's Decision and Order of September 20, 2021, (Dkt. No. 120), and this Court's Decision and Order of April 14, 2022, (Dkt. No. 176). Plaintiffs argue that the newly produced discovery shows that at least one of XPO's findings was shared with DuPont and that DuPont shared the results of its own investigation with XPO.

Initially, it is noted that the existence of DuPont's "internal" investigation into the incident does not have an inherent effect on XPO's assertion of privilege over its own accident investigation and report. Indeed, DuPont remains resolute in its position that it never received a copy of XPO's accident report, nor was it privy to the details of XPO's investigation.[10] Further, XPO filed a memorandum on November 23, 2022 in response to

---

[10] DuPont offers supplemental declarations from its employees and legal counsel about the circumstances of DuPont's investigation which uniformly deny that XPO ever shared its own investigation report with them. These include statements from (1) Jean-Erik Sylvain (Technology Guardian for DuPont / formerly Program Manager); (2) Jeffrey Shields (Environmental, Health, and Safety Manager for DuPont); (3) Ryan Lema, Esq. (prior counsel for DuPont); (4) Lisa Smith, Esq. (prior counsel for DuPont); and (5) Sarah DiLuzio, Esq. (Chief Litigation Counsel for DuPont). (Dkt. Nos. 223-29 – 223-33).

Plaintiffs' motion reaffirming its position that XPO never revealed its investigation report to DuPont and arguing that Plaintiffs have not offered any evidence to support a finding that XPO waived its privilege over the report by subsequent disclosure to a third party. (Dkt. No. 222).

However, DuPont's recently produced email communications cast some doubt on XPO and DuPont's assertions that XPO's report was not shared with DuPont. In particularly, an email from Julie J. Eaton (Corian Design Global Business Director for DuPont) to another DuPont employee, Marc Doyle, dated August 16, 2018, implies that XPO shared at least a portion of its investigative findings with DuPont employees. (Dkt. No. 217, pg. 5). Ms. Eaton's email states:

> I wanted to provide you with an update on the quartz slab incident at Lockport. XPO has conducted their internal investigation. There were 5 findings. 1 of the 5 findings was to understand the policies and procedures from DuPont for handling of quartz containers. We completed an information request and have not heard back from XPO at this time.

(*Id*.). In an email the following day, Ms. Eaton also stated to Mr. Doyle that "[t]he report from XPO is an important piece." (*Id*.). DuPont's intent to learn the outcome of XPO's investigation into the accident is clear and Ms. Eaton's email suggests that certain contents of XPO's report had been shared at that point.

To be clear, Plaintiffs have not offered any conclusive evidence showing that XPO's report or its contents were shared with DuPont, and Ms. Eaton's email alone is unlikely to support a finding that XPO waived its privilege over the report by disclosure to a third party. For this reason, it is necessary to allow Plaintiff an opportunity to depose Ms. Eaton to ascertain the meaning of this email and her knowledge about any relevant disclosure of information.

_DuPont's Withholding of Documents and Failure to Produce Privilege Log_

Plaintiffs submit that DuPont has committed further violations of the Federal Rules and Court directives by failing to produce responsive discovery or, in the alternative, properly asserting claims of privilege. Plaintiffs urge the Court to find that DuPont waived any claim of privilege over withheld documents or evidence for which it did not timely serve a privilege log.

At a hearing held on March 25, 2021, the Court explicitly ruled that ESI discovery would be produced for the time period of five years prior to the subject accident to the present (in other words, the date the search would be performed). Despite this, defense counsel admitted that they had withheld all documents relating to subsequent remedial measures and subsequent accidents on the basis that they believed such documents are inadmissible, and therefore, undiscoverable, as discussed above. Although DuPont subsequently brought a motion for a protective order, DuPont did not seek advance leave of the Court to withhold such documents, nor did defense counsel notify Plaintiffs that the material was withheld or explain its basis for doing so prior to the completion of ESI discovery. In addition, DuPont's counsel also admitted to withholding documents from production based on attorney-client privilege without providing a privilege log.

Rule 26 of the Federal Rules of Civil Procedure requires that "when a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible

things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5); *see also* W.D.N.Y. Local R. Civ. P. 26(d)(2) (requiring assertion of privilege "be furnished in writing when the party responds to such discovery or disclosure"). The burden of establishing attorney-client or work product privilege is on the party asserting the respective privilege. *United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). Withholding privileged materials without including the material in a privilege log may result in a finding that the privilege has been waived. *Chase Manhattan Bank, N.A., v. Turner & Newall, PLC*, 964 F.2d 159, 166 (2d Cir. 1992); *see Hinterberger v. Catholic Health Sys.*, 284 F.R.D. 94, 105 (W.D.N.Y. 2012) ("A failure to comply with this requirement results in a waiver of the asserted privilege in the withheld information.") (collecting cases); *see also Aurora Loan Servs. v. Posner*, 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007) ("Failure to furnish an adequate privilege log is grounds for rejecting a claim of attorney client privilege.") (citing *Construction Prods.*, 73 F.3d at 473). It has been observed that only "flagrant" violations of these rules should result in a waiver of privilege. *Angelone v. Xerox Corp.*, 09-CV-6019, 2012 U.S. Dist. LEXIS 20482, at *12 (W.D.N.Y. Feb. 17, 2012). Whether waiver is warranted depends on such factors as the length of the delay, the willfulness of the transgression, and the harm to other parties. *Dey, L.P. v. Sepracor, Inc.*, 07-CV-2353, 2010 U.S. Dist. LEXIS 130330, at *6 (S.D.N.Y. Dec. 8, 2010).[11]

---

[11] The Court notes that Rule 26(b)(5) does not squarely apply to documents withheld from discovery for reasons other than claims of privilege or protected trial-preparation material. Here, many of DuPont's documents were withheld on an evidentiary (Fed. R. Evid. 407) or discoverability basis, not privilege. Nonetheless, the privilege logs used by DuPont, both previously and belatedly for the most recent discovery production, indicate several categories for documents which are "objected to and protected from discovery." (Dkt. No. 223-20). Those reasons include: "F: Redacted Information Containing Unrelated Material Not Reasonably Calculated to Lead to Discovery of Admissible Evidence." (*Id.*). Thus,

Counsel for DuPont states that its failure to serve a privilege log along with its ESI production on or about March 9, 2022 was an oversight and far from a flagrant violation of the Federal Rules. Ms. Hafner submits that privilege logs were provided for discovery productions in January 2020, October 2020, and January 2022. She argues that even though such a log was absent from the March 2022 production, approximately half of the documents withheld as privileged were listed and described in prior privilege logs, thus lessening any harm or prejudice to Plaintiffs. Counsel also submits that after this issue was raising during a Court conference on August 22, 2022, a complete privilege log was provided on November 14, 2022.

In light of this record, the Court finds that DuPont has waived its right to assert attorney-client privilege, or other privilege, over any documents withheld from production on March 9, 2022, or a subsequent date, for which it did not produce a privilege log contemporaneously. Although DuPont argues that the failure to produce the log was mere oversight, the factors support finding of waiver. First, the delay between production of the discovery and provision of the privilege log was lengthy – approximately seven months from March 9, 2022 to November 14, 2022 (amended on November 23, 2022). Further, the provision of the log was only occasioned by the Court's questioning of DuPont's apparent unilateral withholding of evidence. As to willfulness, DuPont's actions were also contrary to the Court's ruling concerning the time parameters for ESI discovery production and the Court's related prior directives to XPO and Plaintiffs regarding the conduct of depositions in general and specifically towards the issue of discovery related to

---

it is clear that DuPont's counsel was aware of its responsibility to expressly make a claim and provide a description of any evidence it withheld from production, even if not doing so under a strict definition of privilege or work product.

subsequent remedial measures.[12] Harm to Plaintiffs has occurred through the repeated delays in discovery occasioned by DuPont and the risks of incomplete discovery which accompany the withholding of documents in violation of the Federal Rules. As such, these materials are subject to disclosure by DuPont immediately.

### Appropriate Sanctions or Remedies

DuPont has shown a concerning pattern of behavior during discovery that may lead this Court or the District Court to find that willful obstruction and noncompliance have occurred. Most concerning to this Court is DuPont's misrepresentations and failure to produce its own investigative report and other documents or communications related to that investigation. However, additional facts are necessary to determine whether striking DuPont's answer, or a lesser sanction, is warranted. At this time, without further discovery, the Court cannot fully determine the nature and extent of investigation performed by DuPont; the circumstances of DuPont's decision not to produce its investigation report or related documents and communications; nor the extent of investigative information or findings shared by XPO with DuPont and the effect of sharing, if any, on XPO's assertion of privilege over those documents.

---

[12] In late 2019, a discovery dispute arose involving deposition witnesses for non-party XPO Logistics who were instructed by XPO counsel not to answer questions about subsequent remedial measures. On November 13, 2019, the Court held a conference during which it ruled that witnesses were not to be directed not to answer such questions. The Court then inquired if counsel, including counsel for DuPont, understood that witnesses were to answer all questions, with objections noted on the record, and explained that those procedures were "the way it is going to be throughout this." (Dkt. No. 193-4, pg. 8). *See generally* Fed. R. Civ. P. 30(c)(3) ("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."). Counsel for DuPont now claims that she understood this ruling only to apply to XPO and Plaintiffs and that it was not applicable to her. Defense counsel's explanation is wholly unconvincing, and this conduct is indicative of counsel's apparent unwillingness to abide by Court directives.

Nonetheless, the Court is gravely concerned by the conduct of DuPont and its counsel in this matter. Even if additional factfinding reveals that the prejudice to Plaintiffs goes no further than is already established, the Court views DuPont's conduct as being offensive to the discovery process and judicial system. At this point, the Court finds that DuPont's claims of good faith, inadvertence, and other explanations for its conduct strain credibility. DuPont is warned that further obstruction or noncompliance will result in a recommendation to strike its answer and/or for the imposition of other sanctions.

Thus, the Court recommends that Plaintiff Mangine be allowed further opportunity to pursue answers to these open questions and renew her motion to strike, if she finds it necessary and appropriate, at a later date. At minimum, further discovery should include Plaintiff's option to depose Julie J. Eaton; to continue the deposition of Jean-Erik Sylvain; and to complete the deposition of XPO Logistics' corporate designee pursuant to this Court's recent Decision and Order dated January 30, 2023. (Dkt. No. 236). Plaintiff should also have the opportunity to depose any other newly identified witness and to re-open any completed depositions for additional questioning based on information gained from DuPont's accident report or related to DuPont's newly disclosed investigation. Lastly, it is recommended that the costs and expenses, including attorney fees, for each of these depositions be borne solely by DuPont.

## CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's motion to strike Defendant's answer (Dkt. No. 193) be denied without prejudice to renewal. Further, it is ordered that Defendant's motion for protective order (Dkt. No. 194) is denied and Plaintiff's cross-motion to compel (Dkt. No. 196) is granted.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Wolford, any objections to this Report, Recommendation and Order must be filed with the Clerk of Court within fourteen days of service of this Report, Recommendation, and Order in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Wolford.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which

objection is made and the basis for each objection, and shall be supported by legal authority." *Failure to comply with these provisions may result in the District Court's refusal to consider the objection.*

**SO ORDERED**.

Dated:  February 13, 2023
          Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge

28